UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA G. LOOMAN, | Case No. EDCV 13-193 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## I. SUMMARY

On February 6, 2013, plaintiff Angela G. Looman ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion")[2] and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; February 7, 2013 Case Management Order ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff also submitted a declaration from her attorney ("Rohlfing Decl.") and two exhibits ("Plaintiff's Ex.").

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[3]

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 17, 2009, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 30, 140). Plaintiff asserted that she became disabled on January 6, 2007, due to restless legs syndrome ("RLS"), panic disorder, chronic obstructive pulmonary disease ("COPD"), right knee injury, emphysema and a learning disability. (AR 149). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 7, 2011. (AR 46-77).

On August 5, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 30-41). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: osteoarthritis of the left knee, cervical spondylosis, restless legs syndrome, chronic obstructive pulmonary disease, and emphysema (AR 32); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 34); (3) plaintiff retained the residual functional capacity to perform a range of sedentary work (20 C.F.R. § 416.967(a)) with additional exertional and nonexertional limitations[4] (AR 34-35); (4) plaintiff could not

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[4] The ALJ stated that plaintiff: (i) could lift and/or carry 10 pounds; (ii) could stand and/or walk for six hours out of an eight-hour workday with regular breaks; (iii) could sit for two hours out of an eight-hour workday with regular breaks; (iv) needed to switch between sitting and standing positions at the work station every 30 minutes for one to three minutes at a time;

(continued...)

perform her past relevant work (AR 40); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically order clerk (food and beverage), assembler of buttons and notions, and sorter of small agricultural products (AR 41); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 36).

The Appeals Council denied plaintiff's application for review.  (AR 4).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

---

[4](...continued) (v) could occasionally kneel, stoop, crawl, crouch, and climb ramps and stairs; (vi) could not climb ladders, ropes, and scaffolds; (vii) had no restrictions on using the left upper extremity; (viii) could occasionally reach overhead with the right dominant upper extremity; (ix) could not perform forceful pushing or pulling and use foot pedals with the right lower extremity; (x) needed to avoid concentrated exposure to extreme cold; (xi) needed to avoid pulmonary irritants such as dust, fumes, gases, and odors; (xii) could sustain attention and concentration for two hour blocks of time; and (xiii) could understand and respond appropriately to supervisors, co-workers and the general public.  (AR 34-35).

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.   DISCUSSION**

    **A.   The ALJ's Findings at Step Five Are Free of Material Error**

        **1.   Pertinent Law**

If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

Where, as here, a claimant suffers from both exertional and nonexertional limitations, the Grids do not mandate a finding of disability based solely on the claimant's exertional limitations, and the claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case, the Commissioner must consult a vocational expert.[5]  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); see Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir. 2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

### 2. Analysis

Here, plaintiff contends that a reversal or remand is warranted essentially because the sitting, standing and/or walking limitations the ALJ set out in the hypothetical question posed to the vocational expert at the administrative hearing (*i.e.*, "sit about six hours . . . [and] stand and walk about two hours in an eight-hour day")  (AR 74) were different than those the ALJ included in her residual functional capacity assessment for plaintiff in the administrative decision (*i.e.*, "stand and/or walk for six hours . . . [and] sit for two hours out of an eight-hour

---

[5] The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

1  workday with regular breaks") (AR 34).  (Plaintiff's Motion at 5-8).  The Court
2  disagrees.
3      First, the Court finds that any discrepancy between the sit/stand/walk
4  limitations in the decision and those in the hypothetical question posed at the
5  hearing were the result of a harmless scrivener's error.  As noted above, the most
6  restrictive hypothetical the ALJ posed to the vocational expert included limitations
7  on sitting and walking/standing that were consistent with work at the sedentary
8  level of exertion (*i.e.*, standing and/or walking "no more than about 2 hours" and
9  sitting "approximately 6 hours" in an 8-hour workday).  See 20 C.F.R.
10 § 416.967(a); Social Security Ruling ("SSR") 83-10 at *5 (emphasis added)).  In
11 the decision, the ALJ stated that plaintiff retained the residual functional capacity
12 generally to perform a limited range of "sedentary work."  (AR 34, 41).
13 Consequently, the specific finding in the ALJ's residual functional capacity
14 assessment for plaintiff which suggests an ability to engage in a significantly
15 greater level of exertion (*i.e.*, "stand and/or walk for six hours" and sit for only
16 two hours in an eight-hour workday) was clearly a typographical error.
17     Second, the foregoing error was harmless.  Specifically, in finding plaintiff
18 not disabled at step five, the ALJ expressly relied on testimony from the
19 vocational expert that jobs remained available in significant numbers in the
20 national economy even if plaintiff (or a hypothetical person with plaintiff's
21 characteristics) could only do a limited range of sedentary work – *i.e.*, a much
22 more restrictive residual functional capacity than that noted in the ALJ's decision.
23 (AR 41, 74-75).  As discussed below, the opinions of the examining physician
24 (*i.e.*, that plaintiff could perform *more* than sedentary work) was substantial
25 evidence supporting the ALJ's finding at step five that plaintiff could perform a
26 limited range of sedentary work, and therefore, that plaintiff was not disabled.
27     Accordingly, a remand or reversal on this basis is not warranted.
28 ///

**B. The ALJ Properly Evaluated the Medical Opinion Evidence**

Plaintiff contends that a reversal or remand is warranted because the ALJ failed properly to evaluate the opinions of plaintiff's treating physicians. (Plaintiff's Motion at 9-14). For the reasons discussed below, the Court disagrees.

**1. Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not

---

[6]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 2.     Dr. Craig Mueller

Plaintiff contends that the ALJ improperly rejected the opinions expressed by Dr. Craig Mueller in an August 10, 2010 "Physical Residual Functional Capacity Questionnaire" with attached "Physician's/Agency Statement"[7] that

---

[7] In the Physical Residual Functional Capacity Questionnaire, Dr. Mueller noted, among other things, that plaintiff had "constant unrelenting pain," and opined that plaintiff (i) was incapable of even "low stress" jobs; (ii) could not walk any city blocks without severe pain; (iii) could sit at least six hours, and stand or walk less than two hours in an eight-hour working day (with normal breaks); (iv) needed to walk around for 15 minutes out of every hour; (v) needed to elevate her legs with prolonged sitting; (vi) could lift no weight at all; (vii) could frequently look down and hold her head in a static position, and occasionally turn her head right or left and/or look up; (viii) could never twist, stoop, crouch, or climb ladders or stairs; and
(continued...)

plaintiff was essentially unable to perform even sedentary work ("Dr. Mueller's Opinions"). (Plaintiff's Motion at 10-11, 13-14) (citing AR 335-41). The Court concludes that a remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Mueller's Opinions for specific and legitimate reasons supported by substantial evidence.

First, the ALJ properly rejected Dr. Mueller's Opinions to the extent they were "conclusory and inadequately supported by clinical findings." See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, although Dr. Mueller diagnosed plaintiff with "multi level cervical discopathy," the Physical Residual Functional Capacity Questionnaire does not identify any "clinical findings and objective signs" which support the diagnosis. (AR 335). In addition, contrary to Dr. Mueller's conclusion that plaintiff was unable to perform even sedentary work, Dr. Mueller's treatment records for plaintiff reflect physical examinations that were mostly within normal limits. (AR 342-58, 421-42). Although plaintiff asserts in a conclusory manner that "[t]he record as a whole supports the opinions of Dr. Mueller" (Plaintiff's Motion at 13), the Court will not second guess the ALJ's reasonable determination to the contrary. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

---

[7](...continued)
(ix) would be absent from work more than four days per month due to her impairments or treatment. (AR 335-39). In the Physician's/Agency Statement, Dr. Mueller checked a box which indicated that plaintiff was "permanently disabled." (AR 341).

Second, the ALJ properly rejected Dr. Mueller's Opinions as inconsistent with plaintiff's own statements regarding her functional capabilities. See Morgan, 169 F.3d at 601-02 (ALJ may reject medical opinion that is inconsistent with other evidence of record including claimant's statements regarding daily activities). For example, as discussed in more detail below, contrary to plaintiff's alleged disabling symptoms, plaintiff has stated that she was able to, among other things, care for her two children and do various household chores. (AR 178-80, 247).

Third, the ALJ properly rejected Dr. Mueller's assertion in the Physician's/Agency Statement that plaintiff was "permanently disabled." (AR 341). Such a conclusory, non-medical opinion is not binding on the Commissioner and may be rejected without any explanation. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Finally, the ALJ properly rejected Dr. Mueller's Opinions, in part, in favor of the conflicting opinions of the state-agency examining physician, Dr. Bryan H. To, who did not find that plaintiff had any disabling impairment. (AR 38, 231-36). The opinions of Dr. To were supported by his independent examination of plaintiff, and thus, even without more, constituted substantial evidence upon which the ALJ could rely to reject the treating physician's opinions. See, e.g.,

11

Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Accordingly, a remand or reversal on this basis is not warranted.

### 3. Dr. Navdeep Loomba

Plaintiff contends that the ALJ improperly rejected Dr. Navdeep Loomba's opinions in a February 17, 2011 "Physical Residual Functional Capacity Questionnaire"[8] that plaintiff had functional limitations which essentially would preclude any substantial gainful activity ("Dr. Loomba's Opinions"). (Plaintiff's Motion at 11-13) (citing AR 376-80). The Court concludes that a remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Loomba's Opinions for specific and legitimate reasons supported by substantial evidence.

Here, the ALJ properly rejected Dr. Loomba's Opinions because they were unsupported by the physician's own notes or the record as a whole. See Bayliss, 427 F.3d at 1217 (citation omitted); Connett, 340 F.3d at 875. For example, although plaintiff received several spinal injections to treat her pain, Dr. Loomba's progress notes reflect little more than plaintiff's subjective complaints as the basis

---

[8]In the Physical Residual Functional Capacity Questionnaire, Dr. Loomba noted, among other things, that plaintiff had "[n]eck pain radiating into upper back and arms" and opined that plaintiff (i) was incapable of even "low stress" jobs; (ii) could walk only 1-2 city blocks without rest or severe pain; (iii) could sit about four hours, and stand or walk less than two hours in an eight-hour work day (with normal breaks); (iv) would need to walk around for five minutes out of every hour; (v) would need to shift positions at will; (vi) would need to take unscheduled breaks of 15 minutes every 1-2 hours during an eight hour working day; (vii) could lift and/or carry less than 10 pounds occasionally, and 10 pounds rarely; (viii) could frequently look down and hold her head in a static position, and occasionally turn her head right or left and/or look up; (ix) had no noted postural limitations; (x) could reach with her arms (including overhead) only 50 percent of the time during an eight-hour work day; and (xi) would be absent from work about three days per month due to her impairments or treatment. (AR 376-80).

for providing such treatment. (AR 274-328). Similarly, the only "clinical findings and objective signs" Dr. Loomba noted were plaintiff's subjective complaints (*i.e.*, "neck pain radiating into upper back and arms"). (AR 376). The ALJ was entitled to reject Dr. Loomba's Opinions to the extent they were based on plaintiff's subjective complaints which, as noted below, the ALJ properly discredited. See, e.g., Bayliss, 427 F.3d at 1217 (ALJ properly rejected opinion of treating physician which was based solely on subjective complaints of claimant and information submitted by claimant's family and friends).

Accordingly, a remand or reversal on this basis is not warranted.

### C.   The ALJ Properly Evaluated Plaintiff's Credibility

#### 1.   Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins, 261 F.3d at 857.

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when

13

1  there is affirmative evidence of malingering. Id. The ALJ's credibility findings
2  "must be sufficiently specific to allow a reviewing court to conclude the ALJ
3  rejected the claimant's testimony on permissible grounds and did not arbitrarily
4  discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th
5  Cir. 2004).
6      To find the claimant not credible, an ALJ must rely either on reasons
7  unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal
8  contradictions in the testimony, or conflicts between the claimant's testimony and
9  the claimant's conduct (*e.g.*, daily activities, work record, unexplained or
10 inadequately explained failure to seek treatment or to follow prescribed course of
11 treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at
12 680-81; SSR 96-7p. Although an ALJ may not disregard a claimant's testimony
13 solely because it is not substantiated affirmatively by objective medical evidence,
14 the lack of medical evidence is a factor that the ALJ can consider in her credibility
15 assessment. Burch, 400 F.3d at 681.
16     **2.  Analysis**
17     Here, plaintiff contends that the ALJ inadequately evaluated the credibility
18 of her subjective complaints. (Plaintiff's Motion at 14-19). The Court disagrees.
19     First, the ALJ properly discredited plaintiff's subjective complaints as
20 inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59
21 (inconsistency between the claimant's testimony and the claimant's conduct
22 supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d
23 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and
24 actions cited as a clear and convincing reason for rejecting the claimant's
25 testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of
26 disabling symptoms, plaintiff stated in a Function Report that, among other things,
27 ///
28 ///

she could care of her two children,[9] and she could load the dishwasher, clean the kitchen, use public transportation, go grocery shopping, and watch television "all day [and] night."  (AR 35-36) (citing Ex. 5E [AR 178-80]).  As the ALJ also noted, the August 17, 2009 report of a consultative psychological evaluation noted that plaintiff was "able to cook meals, do light chores, watch TV, and shop twice a month."  (AR 36, 247).

While plaintiff correctly suggests that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony.  See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted).  Here, the ALJ properly discounted plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment."  Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).  While plaintiff argues that her daily activities do not "exceed [her alleged] limitations" (Plaintiff's Motion at 17), the Court will not second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff.

---

[9]The Court notes that in her Function Report plaintiff answered "no" when asked "[d]oes anyone help you care for other people . . . ."  (AR 177).

Second, the ALJ properly discounted plaintiff's credibility, in part, based on plaintiff's unexplained failure to seek or follow treatment consistent with the alleged severity of her subjective complaints. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may properly consider plaintiff's failure to "seek treatment or to follow a prescribed course of treatment" in assessing credibility) (citations omitted); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (In assessing credibility, ALJ properly considered doctor's failure to prescribe and claimant's failure to request any serious medical treatment for supposedly excruciating pain); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms.). For example, as the ALJ noted, although plaintiff testified that she suffered from depression, she did not seek therapy and the only mental health treatment she received was medication from her primary care physician. (AR 63). In addition, as the ALJ noted, the record reflects that plaintiff received only conservative treatment for chronic obstructive pulmonary disease ("COPD) and emphysema. (AR 38) (citing Exhibits 15F [AR 374-75]). More significantly, plaintiff admitted to smoking half a pack of cigarettes per day. (AR 231). It was reasonable for the ALJ to conclude that if plaintiff's respiratory symptoms were as severe as claimed, plaintiff would have quit smoking. (AR 38).

Third, the ALJ properly discounted the credibility of all of plaintiff's subjective complaints based on plaintiff's "poor performance" during a psychological evaluation. (AR 36) (citing Exhibit 5F [AR 246-51]); see Tonapetyan, 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (citations omitted). For example, an examining psychologist noted that during psychological testing plaintiff was "minimally to moderately

cooperative and did not appear to be putting forth her best effort" and that plaintiff's "[Test of Memory Malingering] scores were in the probable range for malingering." (AR 250). Although the ALJ gave plaintiff an opportunity at the hearing to explain the psychologist's findings, plaintiff could not. (AR 64-65).

Finally, the ALJ properly discounted plaintiff's credibility in part because plaintiff's pain allegations were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, physical examinations noted reduced range of motion in plaintiff's neck and right knee, but plaintiff otherwise had a normal gait, was able to stand on her heels and toes, had negative straight leg raising tests, and had normal motor strength and sensory. (AR 38 (citing Exhibit 18F [AR 414-36]); AR 307, 310, 314, 317, 320, 324, 327).

Accordingly, a remand or reversal on this basis is not warranted.

### D.     **Plaintiff Is Not Entitled to a Remand Based on New Evidence Submitted to the Appeals Council**

Plaintiff essentially asserts that a reversal or remand is warranted because vocational evidence she attached as exhibits to the brief she presented to the Appeals Council in support of her request for review of the ALJ's decision (specifically, data published in an edition of the Specific Occupation Employment Unskilled Quarterly and reports generated by the "Job Browser Pro" software program (collectively "vocational evidence") (Plaintiff's Ex. 1)) was not included in the Certified Administrative Record lodged with the Court. (Plaintiff's Motion at 19). To the extent the Appeals Council considered the vocational evidence in deciding whether to review the ALJ's decision, this Court must also consider such evidence in determining whether the ALJ's decision was supported by substantial

evidence and free from legal error.  See Brewes v. Commissioner of Social Security Administration, 682 F.3d 1157, 1162-63 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); see also Taylor v. Commissioner of Social Security Administration, 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error") (citing Ramirez v. Shalala, 8 F.3d 1449, 1451-54 (9th Cir. 1993)).  Nonetheless, for the reasons discussed below, a reversal or remand is not warranted on the asserted basis.

To the extent plaintiff suggests that the Appeals Council gave no consideration at all to the vocational evidence, such an assertion is belied by the record.  Plaintiff's attorney attests that he attached the vocational evidence to the November 18, 2011 letter brief plaintiff submitted to the Appeals Council in support of her request for review, and the facsimile transmission receipt reflected that all pages of the submission had gone through. (Plaintiff's Motion at 19; Rohlfing Decl. ¶¶ 2-3; Plaintiff's Exs. 1-2).  Moreover, in denying review, the Appeals Council noted that it had "considered" the November 18, 2011 letter brief in which plaintiff detailed her interpretation of the vocational evidence attached. (AR 4, 8).  Although the Appeals Council did not expressly state that it had reviewed the raw data in the vocational evidence itself, it was not required to so state.  Cf. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'").

Even assuming that the Appeals Council failed to consider the vocational evidence, any error in this respect would have been harmless.  First, as discussed

in Part IV.A.2. supra, substantial evidence supports the ALJ's non-disability determination at step five. Plaintiff fails to demonstrate that her lay assessment in the November 18, 2011 letter brief of the raw data drawn from the vocational evidence undermines the reliability of the vocational expert's opinion which the ALJ adopted at step five. Second, even if the evidence as a whole could support a finding of "disabled" at step five when the vocational evidence is considered, this does not warrant reversing the ALJ's contrary finding which, as noted above, is also supported by substantial evidence. See Robbins, 466 F.3d at 882 (citation omitted); Thomas, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.") (citation omitted).

Accordingly, a remand or reversal is not warranted on this basis.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 20, 2013

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE